**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **CHARLES JARAMILLO** *et al.*, | |
| *Plaintiffs*, | **Civil Action** |
| *v.* | **No. 19-cv-4936** |
| **CITY OF COATESVILLE** *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION**

**GOLDBERG, J.**                                                   **August 31, 2023**

Plaintiffs Charles Jaramillo and six of his tenants have sued the City of Coatesville and four City officials under 42 U.S.C. § 1983 for alleged violations of Plaintiffs' civil rights. Plaintiffs claim that City officials misused their power to harass and ultimately evict them in a scheme designed to transfer ownership of Jaramillo's properties to friends of the City Council. Following my ruling on Defendants' motion to dismiss, Plaintiffs' remaining claims are for alleged violations of their rights to substantive due process, procedural due process, equal protection of the laws, and protection from unreasonable seizures.

All Defendants have moved for summary judgment on all remaining claims. For the reasons set out below, Defendants' motion will be granted.

## I.    FACTS

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Hugh v. Butler County. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005). The facts below are

therefore presented in the light most favorable to Plaintiffs. However, two additional points of clarification are needed.

First, as required by my Policies and Procedures, Defendants attached a numbered statement of facts to their motion, which Plaintiffs did not respond to. Thus, to the extent Defendants' facts are supported by evidence and not contradicted by evidence cited in Plaintiffs' response in opposition, I will treat Defendants' facts as undisputed. See Fed. R. Civ. P. 56(e)(2); Seiple v. Cracker Barrel Old Country Store, Inc., No. 19-cv-2946, 2021 WL 5163198, at *1 n.1 (E.D. Pa. Nov. 5, 2021).

Second, Plaintiffs attached a separate statement of facts to their brief in opposition, but many of the paragraphs in Plaintiffs' statement of facts are supported only by citations to Plaintiffs' complaint. A party may not use its own, unverified pleading to support a factual contention at summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Rather, a citation to evidence is required. Id.[1] Defendants nevertheless admit several of Plaintiffs' otherwise unsupported facts, and I will therefore treat the facts on which the parties agree as undisputed. But unsupported facts pertaining to issues on which Plaintiffs bear the burden of proof, and which Defendants do not admit, are not properly before me and are therefore omitted from my factual summary.

With those points in mind, the evidence, viewed in the light most favorable to Plaintiffs, could establish the following:

---

[1] Plaintiffs' response that Defendants failed to engage in discovery is unavailing at this late stage of the litigation. See United States ex rel. Gohil v. Sanofi U.S. Servs. Inc., No. 02-cv-2964, 2020 WL 1888966, at *4 (E.D. Pa. Apr. 16, 2020) (motion to compel discovery must be filed before discovery end date).

On October 9, 2015, Plaintiff Charles Jaramillo ("Jaramillo") executed a contract to purchase certain parcels of land in the City of Coatesville, located at 239, 245, 247, and 249 East Lincoln Highway ("the Properties"). The seller was identified on the contract as "Maranatha's Church and School" ("Maranatha"), and the contract was signed on Maranatha's behalf by Jonathan Stonewall and Shauna Purnell, both members of Maranatha's governing board. (Defendants' Ex. C; Stonewall Tr., Defendants' Ex. D, 9:18-23, 14:4-8; Purnell Tr., Defendants' Ex. E, 70:24-71:6.) The contract called for Jaramillo to pay the full purchase price by a "Settlement Date" in 2030. In the interim, Jaramillo was to cover Maranatha's mortgage payments for the Properties. The contract also contained the following language regarding Jaramillo's right to use the Properties before the Settlement Date:

> Buyer and Seller agree that Buyer [i.e. Jaramillo] has full access and control of the property starting once this Agreement is executed by both parties. Buyer may perform actions as if the property is his own.
>
> This includes, but is not limited to, performing work to the property, performing marketing and advertising, renting the property out, and/or Selling the property or a portion of the property.

(Defendants' Ex. C at PL0014.)

The Properties consisted of mixed-use commercial space and residential apartments. Jaramillo leased commercial space in the Properties to tenants Fuel City, Bogey's, and Hot Stylez Boutique, and leased residential apartments to tenants Douglas Lambert, Stephen Smith, and Shirley Parker, all of whom are Plaintiffs in this action. (Defendants' Facts ¶¶ 6, 15, 17-19.)

The parties agree that Jaramillo and his tenants performed some renovations at the Properties. (See Defendants' Facts ¶ 20; Plaintiffs' Facts ¶¶ 17, 19, 22, 25; Defendants' Reply to Plaintiffs' Facts ¶ 25.) The parties also agree that the City did not grant Plaintiffs all requested building permits and certificates of occupancy. In particular, the City (or its contractor) issued "stop-work orders" in September 2017 at 239 and 245 East Lincoln Highway (leased to Bogey's

and Hot Stylez Boutique, respectively). (Defendants' Facts ¶ 20; Plaintiffs' Facts ¶¶ 27, 31; Defendants' Reply to Plaintiffs' Facts ¶ 31.)[2]

Sometime around August 2017, Jaramillo became aware that Maranatha was disputing the validity (or authenticity) of the contract of sale and claiming that it still owned the Properties.[3] On August 3, 2017, Jaramillo filed a lawsuit against Maranatha in the Chester County Court of Common Pleas, seeking a declaration that he was the owner. That lawsuit remained pending throughout most of the facts underlying this case. (Defendants' Facts ¶ 23; Defendants' Ex. K.)[4]

On September 19, 2017, Jaramillo met with City officials including Defendants Scott Mulderig (a "Codes Official") and Michael Trio (the City's chief executive), wherein he learned that the City had concerns over who was the true owner of the Properties. Trio requested that Jaramillo "obtain an acknowledgment from the mortgage holder" that he owned the Properties. Jaramillo produced such a letter from Coatesville Savings Bank stating that the bank believed "the agreement [between Jaramillo and Maranatha] is legitimate." (Plaintiffs' Ex. E; Defendants' Facts ¶¶ 31, 33; Defendants' Ex. K.)

On September 21, 2017, the City Solicitor, John Carnes, wrote a letter to "Scott Mulderig, Codes Department" regarding the dispute in ownership. Carnes's letter stated that because "there

---

[2] Plaintiffs also contend that the City "never responded" to certain permitting requests, but do not support this contention with evidence. (Plaintiffs' Facts ¶ 33.)

[3] Plaintiffs attribute this knowledge to a meeting between Jaramillo and Defendant Michael Trio, the City's chief executive, in September 2017, but, based on the timing, Jaramillo must have learned about the dispute earlier. In any event, the exact way Jaramillo learned about Maranatha's position does not appear to be material.

[4] Defendants do not expressly take a position on whether Jaramillo was in fact the owner of the Properties, instead maintaining that Jaramillo's ownership was "disputed." (E.g., Motion at 14.) Because I must view the evidence in the light most favorable to Plaintiffs, I will assume that Plaintiffs could use the signed contract of sale to prove that Jaramillo had a right to occupy and manage the Properties as his own.

has been no communication to the City from the title owners" (i.e. Maranatha), the City would continue to issue Jaramillo permits for the Properties. But any issued permits would carry a disclaimer that "[t]he issuance of any permits is not to be taken as recognition of legal ownership of the properties in question." (Defendants' Ex. L.)

On September 25, 2017, Maranatha's Shauna Purnell sent an email to Mulderig stating that Jaramillo was "not authorized to request permits for Maranatha" and that Maranatha had "not authorized any work to be completed in our property located at 239-249 E. Lincoln Highway." (Defendants' Ex. J at ex. Mulderig-2.)

Plaintiffs testified about two interactions in which Maranatha appeared to be attempting to reacquire the Properties directly from Jaramillo's tenants. On an unspecified date, Nicole Cantanese, a principal of Jaramillo's tenant Fuel City, was approached by Maranatha's Jonathan Stonewell. Stonewall allegedly presented Cantanese with a "forged signed lease" that purported to make Fuel City a tenant of Stonewall instead of Jaramillo. Stonewall told Cantanese that she should pay rent to him instead of Jaramillo and threatened to have her evicted if she did not. Cantanese refused. (Plaintiffs' Ex. D at 129-31.) Jaramillo's tenant Douglas Lambert described a similar incident. (Plaintiffs' Ex. J at 9-10.) Jaramillo's tenant Shirley Parker also testified to a conversation between herself and Defendant Carmen Green, a member of Coatesville's City Council, in which Green warned Parker that the Properties were going to be shut down and that Parker should pay rent to Maranatha instead of Jaramillo. (Plaintiffs' Ex. K at 17-18.)

On February 2, 2018, the City changed its position regarding the issuance of permits. Now, according to a letter from City Solicitor Carnes to Jaramillo, the City would not issue any new permits until the dispute in ownership was resolved in the Common Pleas litigation. Carnes wrote that this new policy was intended to preserve the "status quo." (Defendants' Ex. N.) Based on the

City's new policy of refusing permits, Jaramillo's tenant Bogey's was not granted a permanent "use and occupancy" (U&O) certificate. (Defendants' Reply to Plaintiffs' Facts ¶ 41.)

At some point, Mulderig, the Codes Official, decided that a fire alarm in the Properties was "inoperable" because "it was going off all those times." (Mulderig Tr., Defendants' Ex. A, 162:4-7.) The former Fire Chief testified that it "got to the point where [the Fire Department would] only send one fire truck instead of two." (Defendants' Ex. Q at 57:1-16.) According to Defendants, the dispute in ownership between Jaramillo and Maranatha was a concern because it provided "no clear path to address … serious safety violations" such as the "inoperable fire alarm." (Mulderig Tr., Defendants' Ex. A, 119:25-9.) That is, the City needs to know "who the owner is" to "make them fix something." (Defendants' Facts ¶ 53.)

On July 27, 2018, Carnes wrote a letter to both Jaramillo and Maranatha enumerating complaints the City had with the Properties. Carnes's letter noted the following:

- The storefront of 245 East Lincoln Highway was "unrepaired and without a Use and Occupancy Permit."

- A "Use and Occupancy Inspection" had not been requested for Fuel City.

- The residential apartments above 245 East Lincoln Highway lacked a rental license, had not been inspected "in several years," and had not had a rental fee paid.

- The residential apartments also lacked "compliance with the needed interconnected fire alarm system" which was a "serious safety concern[]," and "there was a fire alarm call at this property just last weekend." (Defendants' Ex. P.)

Carnes's letter concluded by stating that:

- The Properties must be brought into compliance with the listed concerns within ten days.

- Ownership of the property must be established by a "Court Order."

- If those conditions were not met, the City would "shut down the property to assure the safety of the public on the tenth day after the date of this letter." (Id.)

On August 10, 2018, City officials posted the Properties with signs stating that the Properties were "CONDEMNED/UNLAWFUL" and that "ALL OCCUPANTS MUST VACATE PREMISES IMMEDIATELY."[5] (Defendants' Facts ¶ 54; Plaintiffs' Ex. I, at "Exhibit 7.") The record provides multiple reasons for why the City decided to vacate the Properties. The parties agree that the reason given at the time was "Section 111.4 of the International Building Code." (Defendants' Facts ¶ 54.) But Defendants also contend that the Properties were vacated due to "safety issues," including issues with the fire alarm. (Defendants' Facts ¶ 58.) In addition, Defendants acknowledge that the decision to vacate the Properties was based, at least in part, on the "ownership dispute" between Jaramillo and Maranatha. (Defendants' Facts ¶ 57.)

The record also contains conflicting information as to which City officials ultimately decided to vacate the Properties. Mulderig testified that it was decided by Trio and Carnes in a meeting that also included himself and members of the City Council. (Defendants' Facts ¶ 56.) However, Trio testified that the decision to vacate the Properties "came from" the City Council. (Plaintiffs' Ex. L at 156:6-8.) The parties do not discuss when, if ever, Jaramillo's tenants were allowed to reenter the Properties.

On November 28, 2018, Jaramillo and Maranatha settled the Common Pleas action and agreed to jointly sell the Properties. (Defendants' Facts ¶ 60.) Plaintiffs allege that Maranatha violated that agreement, but that allegation does not appear to be material to any of Plaintiffs' remaining claims.

Based on the above facts, Plaintiffs claim that Defendants violated their rights to substantive due process, procedural due process, equal protection of the laws, and to be free from

---

[5] The sign offered as an exhibit is dated August 28. The exact date the Properties were posted "unlawfully occupied" does not appear to be material.

unreasonable seizures. The focus of Plaintiffs' lawsuit is on the City's August 10, 2018 decision to condemn and vacate the Properties, which Plaintiffs contend was a baseless and corrupt attempt to assist Maranatha in its dispute with Jaramillo.

## II.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is evidence from which a reasonable factfinder could return a verdict for the non-moving party, and a dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

## III.   DISCUSSION

### A.   Substantive Due Process

"The Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property without due process of law.'" County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) (quoting U.S. Const. amend. XIV). "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." Id. "[N]on-legislative[6] state action violates substantive due process if arbitrary, irrational, or tainted by improper motive, or if so egregious that it 'shocks the conscience.'" County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 169 (3d Cir. 2006) (quotation marks omitted). Plaintiffs contend the City's decision to vacate the Properties on August 10, 2018 meets that standard.

---

[6] The record before me does not indicate exactly how the decision was made to vacate the Properties. It is thus not apparent whether such decision was "legislative" or "non-legislative." Courts afford legislative action greater deference and will only find a violation of substantive due process where the legislation in question "shocks the conscience." County Concrete Corp., 442 F.3d at 169. For present purposes, I will assume the decision to vacate the Properties was non-legislative and would therefore violate substantive due process if it was "tainted by improper motive." Id.

The central allegation of Plaintiffs' complaint was that the Property was condemned and Jaramillo's tenants were evicted to put a thumb on the scale in favor of Maranatha in its property dispute with Jaramillo, and that this was done due to a friendship between Maranatha's board members and City Council member Carmen Green. If true, this could qualify as an "improper motive" and thus violate Plaintiffs' substantive due process rights. See Ecotone Farm LLC v. Ward, 639 F. App'x 118, 126 (3d Cir. 2016). But as explained below, Plaintiffs have failed to offer sufficient evidence that this allegedly corrupt scheme occurred.

Based on the record before me, the most Plaintiffs can show is that: (1) Maranatha and Plaintiffs were in a dispute and Maranatha was admittedly trying to reclaim ownership of the Properties; and (2) at some point, City Council member Carmen Green told one of Jaramillo's tenants that the Properties were going to be shut down and that the tenants should pay rent to Maranatha instead of Jaramillo. (Defendants' Ex. D at 22:1-9; Plaintiffs' Ex. D at 19-31; Plaintiffs' Ex. J at 9-10; Plaintiffs' Ex. K at 17-18.) But Plaintiffs offer no evidence that connects these facts in any way to the decision to condemn and vacate the Properties. Testimony that members of the City Council were present when the City of Coatesville's decision to condemn and vacate the Properties was made or that the decision "came from" the City Council is simply too inconclusive to justify a factfinder in inferring that the decision was improper. Nor is there any evidence that that decision was improperly effectuated through the City Council's connection to Maranatha. And, while the City's reliance on an unresolved legal dispute between Jaramillo and Maranatha as a basis for vacating the Properties raises the procedural concerns discussed in the following section, Plaintiffs have not offered evidence or authority that this was the type of "improper" motive that may give rise to a substantive due process claim.

Plaintiffs also cannot make out a claim based on the City's conduct being "arbitrary," "irrational," or "so egregious that it 'shocks the con-science.'" Plaintiffs have not pointed to evidence showing how Jaramillo's tenants were removed from the Properties (other than that signs were posted), and thus cannot establish that the tenants were evicted in a shocking manner. And Plaintiffs offer no evidence that the fire alarm was not a legitimate safety concern and thus cannot show that the decision to vacate the Properties was "arbitrary" or "irrational."

For these reasons, summary judgment will be granted to Defendants on Plaintiffs' substantive due process claims.

### B.     Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333 (quotation marks omitted). In determining the level of process that is required before a person is deprived of liberty or property, courts normally consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

Viewing the evidence in the light most favorable to Plaintiffs, the City did deprive Plaintiffs of their possessory interest in the Properties on August 10, 2018. See Abbott v. Latshaw, 164 F.3d

141, 146 (3d Cir. 1998).[7] The question is thus whether that deprivation occurred without "due process of law"—that is, without affording Plaintiffs an "opportunity to be heard at a meaningful time and in a meaningful manner" in light of the three considerations enumerated above.

Plaintiffs' strongest argument is that the City apparently used the mere fact of a dispute between Maranatha and Jaramillo as a basis for denying permits and evicting Jaramillo's tenants without first determining whether Maranatha's accusation was accurate.[8] Seizing property based on a mere accusation, without affording pre-deprivation procedures by which that accusation may be challenged, will often violate due process. Fuentes v. Shevin, 407 U.S. 67, 83 (1972); Abbott, 164 F.3d at 146 ("Prior notice is not … absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures.").

The problem is that Plaintiffs have not pointed to any evidence of record as to what processes were available to them to challenge the City's actions prior to the evictions. Jaramillo was aware that Maranatha disputed the contract of sale as early as August 2017, one year before the Properties were vacated. (Defendants' Ex. K.) He was notified that the City would use the dispute as a basis to refuse permits in February 2018, again long before the City took the step of posting the Properties as unlawfully occupied. (Defendants' Ex. N.) Finally, Jaramillo was notified that the City would vacate the properties in the absence of a court order establishing ownership on July 27, 2018, still with ten days' notice. (Defendants' Ex. P.) Plaintiffs have not offered evidence that procedures were unavailable to Jaramillo in the interim to challenge Maranatha's accusation

---

[7] Defendants argue that Jaramillo and his tenants lacked a property interest in the Properties because the Common Pleas action between Jaramillo and Maranatha was never adjudicated. However, the signed contract of sale creates at least a dispute of fact as to whether Jaramillo and his tenants had a right to possess the Properties. (See D.'s Ex. D at 14:4-8, D.'s Ex. E at 70:24-71:6 (Maranatha's principals agreeing that the signatures matched theirs).)

[8] This was not the only basis given for the evictions, but Defendants concede it was one of the bases. (Defendants' Facts ¶ 57.)

of forgery, the City's refusal to issue permits, or Carnes's determination that a court order establishing ownership was required within ten days. See Marcavage v. Borough of Lansdowne, Pa., 493 F. App'x 301, 308 (3d Cir. 2012) (no due process violation where property owner was well aware of alleged violation and chose not to use available procedures to challenge it).

Defendants take the position that, had Jaramillo or the tenants sought a permit and been refused due to Maranatha's ownership dispute, an appeal was likely available to a "board of appeals" under 35 Pa. Stat. § 7210.501(c), and "a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 597 (3d Cir. 1995). It is not entirely clear on this record whether the cited appeal process was available or, if so, whether it would have been adequate. For example, it is not immediately obvious that Carnes's letters were "decisions of [a] code administrator." § 7210.501(c)(1). It is also unclear whether an appeal would have allowed Plaintiffs to challenge Maranatha's accusation that the contract of sale was forged. But Plaintiffs have the burden of proof on their procedural due process claims and have not pointed to evidence (or cited authority) showing that an administrative appeal process was not available or not adequate.

As to the tenants' due process rights, it is unclear when, if ever, they were notified of Maranatha's accusations or what steps they could have taken to protect their leasehold interests in the Properties. Again Plaintiffs have the burden of proof and have not pointed to evidence that the tenants were unaware of the ownership dispute or that they lacked procedures to challenge the City's decisions.

For these reasons, summary judgment will be granted to Defendants on Plaintiffs' procedural due process claims.

C.        **Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Plaintiffs claim Defendants treated them differently than Maranatha in terms of how code violations were handled at the Properties.

Because Plaintiffs claim that Defendants treated them differently based on a personal relationship with Maranatha rather than on group characteristics such as race or gender, their claim is most analogous to a "class of one" equal protection claim, which "alleg[es] that the litigant itself, and not a particular group, was the subject of discriminatory treatment under a particular law." PG Pub. Co. v. Aichele, 705 F.3d 91, 114 (3d Cir. 2013). To succeed on such a claim, a plaintiff is required to show "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. But the fact that a law may be applied inconsistently does not amount to an equal protection violation unless this was done with a "discriminatory purpose." See id. For example, in PG Publishing Co., the plaintiffs, who were news reporters, did not state an equal protection claim by alleging "only that in some instances, reporters from newspapers in some counties were permitted into [a] polling place, while reporters in other counties were not," because this was not an intentional difference in treatment or motivated by a discriminatory purpose. Id.

In support of their equal protection claims, Plaintiffs point only to the fact that, prior to Maranatha selling the Properties to Jaramillo, Maranatha was cited for a code violation (inadequate heat) but not forced to immediately vacate the Properties. (Defendants' Ex. D. 21:21-24.) But Plaintiffs have offered no evidence as to why Maranatha was permitted to remain in the Properties while Plaintiffs were evicted. In particular, Plaintiffs point to no evidence that Defendants

14

"intentionally treated" Maranatha and Plaintiffs differently. Plaintiffs therefore have not raised a dispute of fact as to their equal protection claims.[9]

For these reasons, summary judgment will be granted to Defendants on Plaintiffs' equal protection claims.

### D.      Unreasonable Seizure

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." Soldal v. Cook County., Ill., 506 U.S. 56, 61 (1992). "[R]easonableness is … the ultimate standard under the Fourth Amendment," which entails "a careful balancing of governmental and private interests." Id. at 71 (quotation marks omitted). Viewing the evidence in the light most favorable to Plaintiffs, the City seized Plaintiffs' possessory interest in the Properties when it ordered the Properties vacated. See id. at 61.[10] The question is whether Plaintiffs have shown that that seizure was "unreasonable."

Authority is sparse on when it is reasonable for municipal officials to seize buildings based on concerns of code violations, safety hazards, or disputed ownership. But seizures of buildings have been found to be reasonable where the buildings posed a "danger" and "adequate recourse [was] provided to challenge any action taken by the local government." Gardner v. McGroarty, 68 F. App'x 307, 312 (3d Cir. 2003) (citing cases).

Plaintiffs have not pointed to evidence that the lack of inspections at the Properties and concerns over the possibly defective fire alarm were unreasonable bases for concluding that the Properties were dangerous. In particular, Plaintiffs have not cited evidence, nor do they appear to

---

[9] I need not reach Defendants' argument that, even if Maranatha and Plaintiffs were intentionally treated differently, the disparity was justified by doubts over who owned the Properties.

[10] Defendants' argument that there was no seizure because Plaintiffs' interest in the Properties was illegitimate creates at most a factual dispute.

contend, that the fire alarm was in fact operable. Plaintiffs also have not cited authority in which seizures that occurred under analogous circumstances were found to be unreasonable.

Instead, Plaintiffs offer the following three responses. Plaintiffs first assert that the procedural justification Defendants now offer for the seizure, 34 Pa. Code § 403.84, was not "cited" by any Defendant at the time. That section provides, in relevant part, that "[w]hen a building code official determines the existence of an unsafe condition, the building code official shall order the vacating of the building or structure." 34 Pa. Code § 403.84(b). Plaintiffs point to no evidence that this provision was not cited nor any authority that citation is required for this code provision to be properly used or that failure to cite a code provision renders a seizure unreasonable.[11]

Second, Plaintiffs object that the seizures were based, at least in part, on a failure to obtain the very same permits, licenses, and inspections that the City refused to issue so long as the ownership dispute was ongoing. While I agree that this conduct raises the procedural due process issues discussed previously, Plaintiffs have not pointed to evidence that procedures were unavailable to them to challenge the City's refusal to issue permits. And even if the City did

---

[11] The parties agree that International Building Code § 111.4 was cited when the properties were posted with "unlawfully occupied" signs. That subsection, under "Certificate of Occupancy," "Revocation," states:

> The building official is authorized to, in writing, suspend or revoke a certificate of occupancy or completion issued under the provisions of this code wherever the certificate is issued in error, or on the basis of incorrect information supplied, or where it is determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any of the provisions of this code.

International Building Code § 111.4 (2012 version). However, it is unclear how this subsection supports the City's decision to vacate the properties.

unreasonably refuse to issue permits, that would not change the fact that the faulty fire alarm provided an independent basis to remove Jaramillo's tenants from the buildings.

Finally, Plaintiffs argue that Defendants' reliance on the faulty fire alarm "rings hollow" given that there is no reference to the fire alarm in "notices of violation" or "the condemnation placards themselves." It is not immediately clear what documents Plaintiffs mean by the "notices of violation" or whether those documents are attached as exhibits. The fire alarm is referenced in Carnes's July 27, 2018 letter that gave Jaramillo ten days' notice that the Properties would be seized. (Defendants' Ex. P.) It is also mentioned as a "significant" concern in an affidavit by the City's Fire Chief that was submitted in the Common Pleas Court litigation. (Plaintiffs' Ex. I, Carnes Dep., at ex. 1.) Assuming that by "the condemnation placards" Plaintiffs mean the signs that were placed on the Properties marking them "unlawfully occupied," those signs referenced the entire chapter on "Housing Standards" in the Coatesville City Code. (Plaintiffs' Ex. I, at "Exhibit 7.")[12] Even taking this evidence in the light most favorable to Plaintiffs, it would not justify a factfinder in concluding that safety was not at least a "reasonable" concern at the Properties, which is all that is required under the Fourth Amendment.

For these reasons, Plaintiffs have not raised a dispute of fact as to whether the seizure of the Properties was unreasonable, and summary judgment will be granted to Defendants on Plaintiffs' Fourth Amendment claims.

---

[12] It is unclear whether the City was relying on the subsection which states:

> Whenever the Codes Department finds that there exists any violation of this code which creates an emergency requiring immediate correction to protect the health or safety of any occupancy of a dwelling or the public, it may issue a notice of violation reciting the existence of the emergency and requiring necessary action to be taken immediately.

Coatesville City Code § 136-16.E.

**IV.**     <u>**CONCLUSION**</u>

For the reasons set out above, Defendants' motion for summary judgment will be granted.

An appropriate order follows.